## STATE v. GEORGE HILLMAN JOHNSON.

141 N. W. (2d) 517.

March 25, 1966—No. 40,117.

*Kempf & Ticen* and *Dale J. Happe,* for relator.

*John G. Pidgeon,* City Attorney of Bloomington, and *John J. Waters,* Assistant City Attorney, for respondent.

Rogosheske, Justice.

We granted a writ of prohibition in this case to review a municipal court interpretation and application of Minn. St. 609.035 of our Criminal Code of 1963 (L. 1963, c. 753, § 609.035) in pending criminal proceedings against defendant where his conduct in driving a motor vehicle gave rise to two complaints charging two separate violations of state traffic statutes.

The precise question presented is whether § 609.035 requires dismissal of a pending charge of driving while under the influence of an alcoholic beverage[1] after defendant was convicted but not yet sentenced for the offense of driving over the centerline,[2] where both offenses charged arise during the course of operating an automobile at a particular time and place.

The facts are stipulated. On July 24, 1965, defendant was arrested by a police officer of the city of Bloomington and was issued two traffic tickets charging the offenses referred to above. The officer witnessed defendant's vehicle enter a four-lane city street and drive upon it for a distance of about 800 feet. Upon entering, the vehicle immediately went to the centerline, straddled it for a time, and continued to the left of it until defendant turned his vehicle into a parking lot adjoining the street. When defendant appeared before the Hennepin County municipal court, he "entered no plea" to the charge of driving while under the influence and requested that he be arraigned on the charge of driving over the centerline. He thereupon pleaded guilty to the latter charge. His plea was accepted and noted upon the clerk's records. Thereafter his motion for sentencing was denied, the court announcing that sentencing would be deferred until "the disposition of the *Driving Under the Influence* charge." Defendant then moved for a dismissal of the pending charge upon the ground that following his conviction of driving over the centerline any further prosecution for conduct constituting more than one offense is barred by § 609.035. He also contended that under § 609.04 (L. 1963, c. 753, § 609.04) the pending charge is an "included crime"

---

[1] Minn. St. 169.121.
[2] § 169.18.

necessarily proved by his conviction of driving over the centerline. The court denied his motion and ordered defendant to stand trial on the pending charge.

For the purposes of this motion and our review only, defendant admits that he was driving under the influence of an alcoholic beverage. Although not a part of the stipulation, we assume also that both the prosecution and defendant contemplated only one trial for both charges.

The perplexing problem concerns the construction and scope of the prohibition against double punishment and multiple prosecutions contained in § 609.035. It provides:

"Except as provided in section 609.585,[3] if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."

In arriving at an answer to the question presented, we must, consistent with basic legal concepts, attempt to effectuate the intention of the legislature. The two most reliable indicators of the legislature's intended application and scope are the language of the statute and the policy considerations as revealed by the history of the statute and the comments of an advisory committee which assisted the legislature in recently revising our criminal code.

■ Although the statute is commonly referred to as one prohibiting double punishment, a reading of it compels a recognition that it contains two prohibitions, one against double punishment and the other against serialized prosecutions for separate offenses similar to that afforded by our constitutional provision prohibiting placing an accused twice in jeopardy for the same offense.[4] Conceivably, double punishment can arise where a person is convicted of two or more offenses following either one prosecution where the charges are stated as separate counts or two

---

[3] Minn. St. 609.585 (L. 1963, c. 753, § 609.585) excludes the crime of burglary from the scope of the application of § 609.035.

[4] Minn. Const. art. 1, § 7.

or more prosecutions where the charges are brought separately. The double-jeopardy prohibition can become applicable when a second prosecution is attempted following a conviction or acquittal upon a previous charge. In either case, the application of the prohibitions turns on the same determination—whether the "person's conduct constitutes more than one offense." Stated another way, a defendant can neither be punished nor prosecuted more than once where his "conduct constitutes more than one offense."

The probable area of application is not as inclusive as an initial reading might suggest. It is not likely that the statute will be used where the "person's conduct" results in the commission of multiple crimes if one of the crimes includes the commission of a lesser or included crime. In those instances, § 609.04 [5] applies and allows conviction of the crime charged or an "included crime, but not both," and bars "further prosecution of any included crime, or other degree of the same crime." In those cases it is clear that, since a conviction of only one crime is permitted, double punishment could not be imposed, and § 609.04 as well as the rule against double jeopardy would prohibit further prosecutions.[6] Thus the instances in which the application of § 609.035 may be sought are narrowed to those where a "person's conduct" results in the commission of two or more separate or nonincluded offenses. Moreover, it must be kept in mind that the type of conduct specified must involve a multiplicity of violations rather than a single violation resulting from a single criminal act. Apparently to emphasize this feature and to encourage its application, the final sentence of the statute was added, authorizing for the first

---

[5] § 609.04 provides: "Subdivision 1. Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A lesser degree of the same crime; or

"(2) An attempt to commit the crime charged; or

"(3) An attempt to commit a lesser degree of the same crime; or

"(4) A crime necessarily proved if the crime charged were proved.

"Subd. 2. A conviction or acquittal of a crime is a bar to further prosecution of any included crime, or other degree of the same crime."

[6] See, People v. Savarese, 1 Misc. (2d) 305, 114 N. Y. S. (2d) 816; People v. Blue, 161 Cal. App. (2d) 1, 326 P. (2d) 183.

time a procedure by which all nonincluded offenses may be charged in one indictment, information, or complaint by stating each violation as a separate count. This procedure contemplates one prosecution wherein an accused is charged and tried for all violations resulting from his conduct It also necessarily contemplates multiple convictions.[7]

The policy and purpose of the statute as now written is best revealed by the comments of the advisory committee and its reporter, Professor Maynard E. Pirsig, who aided a legislative interim commission established in 1955 in performing the task of recommending a revision of our criminal code prior to its enactment in 1963. From these comments it is apparent that the overall design of both § 609.035 and the statute it superseded is to prohibit double punishment and at the same time to insure that punishment for a single incident of criminal behavior involving a multiplicity of violations will be commensurate with the criminality of defendant's misconduct. As stated in the comments of the committee, the purpose of the statute prior to and after revision is "to limit punishment to a single sentence when a single behavioral incident resulted in the violation of more than one criminal statute." [8] The policy underlying this objective appears to be that, where the statute is applicable and defendant is convicted of multiple offenses, as a practical matter a single sentence will necessarily take into account all violations, and imposing up to the maximum punishment for the most serious offense will include punishment for all offenses. As further pointed out by Professor Pirsig, permitting a series of prosecutions and sentences where a single behavioral incident constitutes more than one offense will "exaggerate the criminality of the behavior involved and, in a sense, defeat the policy underlying the constitutional protection against double jeopardy." [9] From these and other published comments, it does appear

---

[7] Our recent case, City of Bloomington v. Kossow, 269 Minn. 467, 131 N. W. (2d) 206, points out that the emphasis of § 609.035 is on the protection against multiple punishment, and that if the prosecution but follow the dictates of the statute as to charging multiple offenses as counts in one prosecution, there is nothing to prevent conviction of each of the offenses.

[8] Advisory Committee Comment, 40 M. S. A. p. 57.

[9] Advisory Committee Comment, 40 M. S. A. p. 58.

that the drafters, as well as the legislature, intended not only to protect against double punishment but also to broaden the protection afforded by our constitutional provisions against double jeopardy. The latter provision prohibits trying a defendant more than once for the same offense. Its underlying policy is to protect an accused from being unduly harassed by repeated prosecutions for the same conduct until a desired result is accomplished.[10] It can be demonstrated that a legislative intention to broaden this protection by statute can be frustrated by treating the offenses, rather than the behavioral incident, as separate or distinct and therefore as determinative of the segment of "conduct" to be considered. But, as we have previously noted, the instances where statutory double jeopardy will be sought under § 609.035 are those involving separate or nonincluded offenses rather than those where the offenses by definition or the requirement of proof may be found to be the same under the constitutional double-jeopardy rule. It follows that any test for applying the statute was clearly intended to emphasize the "person's conduct" rather than the offenses committed.

The purpose and policy expressed by the statute as revised have roots in early legislative enactments and decisions of this court. A brief examination of these also indicates the intended construction and broadened application of the statute. Section 609.035 superseded Minn. St. 1961, § 610.21, the language of which had remained virtually unchanged since it became effective as part of our penal code in 1886.[11] Section 610.21 read as follows:

"Any act or omission declared criminal and punishable in different ways by different provisions of law shall be punished under only one of such provisions, and a conviction or acquittal under any one shall bar a prosecution for the same act or omission under any other provision."

---

[10] See, People v. Morris, 237 Cal. App. (2d) 773, 47 Cal. Rptr. 253; Neal v. State, 55 Cal. (2d) 11, 9 Cal. Rptr. 607, 357 P. (2d) 839. See, also, People v. Ciucci, 8 Ill. (2d) 619, 137 N. E. (2d) 40, where a prosecution for the death of the third victim of a shooting-arson killing finally resulted in the death penalty after the prosecution had failed to obtain such a penalty by the first two trials.

[11] Minn. Penal Code 1886, § 506.

Consistent with the policy expressed by the statute, it was held in State v. Moore, 86 Minn. 422, 90 N. W. 787, 61 L. R. A. 819, that a prosecution for uttering a forged note was barred after defendant had been convicted of uttering a forged mortgage which was contemporaneously given to secure the note. The same result was reached on similar facts in State v. Klugherz, 91 Minn. 406, 98 N. W. 99. However, in State v. Oberman, 152 Minn. 431, 189 N. W. 444, it was held that keeping liquor for sale and the sale of that liquor were separate offenses justifying separate prosecutions. While mentioning but according no significance to the statute, in State v. Fredlund, 200 Minn. 44, 273 N. W. 353, 113 A. L. R. 215, we held that neither constitutional double jeopardy nor the included-offense statute barred separate prosecutions for the death of each of two persons resulting from the same automobile collision. In State v. Winger, 204 Minn. 164, 282 N. W. 819, 119 A. L. R. 1202, despite the fact that both offenses resulted from one physical act against a female child, it was held that an acquittal for rape did not bar a subsequent prosecution and conviction for carnal knowledge. In State v. Thompson, 241 Minn. 59, 62 N. W. (2d) 512, defendant, as a public officer, was acquitted on a charge of receiving public money. In permitting him to be prosecuted again upon the charge of receiving and appropriating the same money, the significance and restricted application of the statute were explained in these words (241 Minn. 66, 62 N. W. [2d] 518):

"* * * This statute [§ 610.21] implements the constitutional provision against double jeopardy (Minn. Const. art. 1, § 7) but adds nothing to the scope of the prohibition therein contained. It is apparent that, in using the words *act* and *omission,* the legislature was using them in the restricted and consequential sense of a single and separate offense."

It should be pointed out that every one of our prior decisions was concerned only with the issue of multiple prosecutions. The issue of double punishment where a defendant is convicted of two or more offenses charged in one indictment has not been directly presented because such procedure was never previously authorized.[12] Since it would be highly

---

[12] Minn. St. 628.14 does authorize count pleading for included offenses in

unlikely in the cases reviewed that the defendant would have been prosecuted the second time had there been a conviction on the first trial, it is understandable that we have not previously been confronted with the application of the statute to a double-punishment situation. Nevertheless, it seems logically inescapable that the test for applying protection from multiple prosecutions and protection from double punishment is the same, and our prior construction could be taken to indicate a restricted approach.

Comparing the above language of § 610.21 with the statute as revised, it is obvious that the significant change is substituting the words "a person's conduct" for "[a]ny act or omission." As declared by the advisory committee, this change was intended to broaden the scope of the statute's application because, except for the two early decisions, its language was so narrowly construed as "to defeat [the statute's] purpose by identifying the act or omission with specific crimes committed even though those crimes were the product of a single performance of the defendant."[13]

---

the following language: "When by law an offense comprises different degrees, an indictment may contain counts for the different degrees of the same offense, or for any of such degrees. The same indictment may contain counts for murder, and also for manslaughter, or different degrees of manslaughter. Where the offense may have been committed by the use of different means, the indictment may allege the means of committing the offense in the alternative. Where it is doubtful to what class an offense belongs, the indictment may contain several counts, describing it as of different classes or kinds."

But notwithstanding § 628.14, the prosecution was not allowed to charge more than one separate offense in a single indictment under the following language of § 630.23: "The defendant may demur to the indictment when it shall appear from the face thereof:

\* \* \* \* \*

"(3) That more than one offense is charged in the indictment, except in cases where it is allowed by statute."

It should be emphasized that we do not here make any attempt to delimit the scope or practical application of the use of counts under § 609.035 other than to say that the procedure could have been used under the facts of the instant case by filing a formal complaint charging two counts before arraignment.

[13] Advisory Committee Comment, 40 M. S. A. p. 57.

How much the legislature intended to broaden the application of the statutory protections is not at all clear. When one undertakes to formulate a test which would encompass the intended broadened application to the multitude of hypothetical situations involving felonies as well as misdemeanors, the difficulties of expressing limitations by defining a single behavioral incident are legion. Nevertheless the mention of cases from other jurisdictions in the advisory committee's comments indicates the desired approach comprehended by the drafters and the legislature. Those comments clearly express an intention to effectuate the "original" purpose of the statute by incorporating the construction and application that New York and California are according to strikingly similar statutes.[14] The New York approach is best demonstrated in People v. Savarese, 1 Misc. (2d) 305, 326, 114 N. Y. S. (2d) 816, 835, where it is stated:

"* * * The true factual test is *'Were all of the acts performed necessary to or incidental to the commission of a single crime and motivated by an intent to commit that crime?'* Then even if another separate crime be committed or another statute also violated, the defendant may not be doubly punished."

The New York court in that case held that the application of the above test would prevent punishing a man for kidnapping and robbery where the kidnapping was a part of the plan to carry out a highway robbery of a truck. The California position is stated in Neal v. State, 55 Cal. (2d) 11, 19, 9 Cal. Rptr. 607, 611, 357 P. (2d) 839, 843, as follows:

---

[14] New York Penal Law, § 1938, reads as follows: "An act or omission which is made criminal and punishable in different ways, by different provisions of law, may be punished under any one of those provisions, but not under more than one; and a conviction or acquittal under one bars a prosecution for the same act or omission under any other provision."

California Penal Code, § 654, reads in part as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

Other states which have similar statutes are Arizona and Utah.

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."

Applying the above test, the California court held that a person could not be convicted for both arson and attempted murder when the arson was the means to be used to commit the murder.

■ Upon a consideration of the indications of legislative intent as analyzed above, we are confronted with formulating a workable test for determining the scope of application of the protections contemplated by the statute. It is no easy task.[15] While the objectives are clear enough, the difficulty lies in formulating a test for determining whether each violation charged resulted from a single behavioral incident. Although the case before us, because of the facts, poses no particular problem, any test must give consideration to the vast number of conceivable situations which are likely to arise. The cases from other jurisdictions and comments of the advisory committee suggest that, apart from the factors of time and place, the essential ingredient of any test is *whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective*. The problem that immediately arises is that this test is phrased in terms of intent, and a characteristic unique to traffic offenses is that intent is not an essential element of the offense. Thus, the test for offenses such as we are faced with in the instant case must necessarily include some substitution for the factors of intent and objective. Where intent is not a factor, it is the singleness of the conduct or behavioral incident itself that must be given the most significance.[16] Sub-

---

[15] The problems involved in formulating such a test and the practical and policy considerations that must be made have been stated and explored by legal writers. See, generally, Horack, *The Multiple Consequences of a Single Criminal Act,* 21 Minn. L. Rev. 805; Note, 24 Minn. L. Rev. 522; Schneider, *Penal Code Section 654; The Prosecutor's Dilemma,* 17 Hastings L. J. 53; 79 Harv. L. Rev. 433.

[16] See, People v. Morris, 237 Cal. App. (2d) 773, 47 Cal. Rptr. 253; People v. Knowles, 35 Cal. (2d) 175, 217 P. (2d) 1; People v. Martin, 208 Cal. App. (2d) 867, 25 Cal. Rptr. 610.

ject to the refinements the multitude of possible fact situations may require, it would seem that violations of two or more traffic statutes result from a single behavioral incident where they occur at substantially the same time and place and arise out of a continuous and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment. Under these circumstances, there exists a substantial relationship between the conduct constituting the violations, and the statute prohibits both double punishment and serialized prosecutions.

■ In the instant case the defendant's infractions occurred during a continuous and uninterrupted operation of his automobile, which took place within a period of a few minutes and a distance of two blocks. Both offenses manifest an indivisible state of mind. More precisely, they manifest errors of judgment. Defendant's initial error in judgment was that he could or should drive while under the influence of intoxicants. The error in judgment as to where on the roadway he should drive his car was clearly coincident with the initial error to drive after drinking. While in the restricted sense there was more than one "act," there can be little doubt that this was a "single behavioral incident." The defendant's goal was to drive his car from one point to another, and in so doing, both his condition and the manner in which he drove were traffic offenses. Consequently, punishment must be limited to a single sentence.

■ In addition, the statute prohibits two separate prosecutions. However, the protection thus afforded is clearly waivable. By accomplishing his objective of separating the prosecutions, we find that the defendant in this case waived his right to the protection against multiple prosecutions. As noted, the purpose of this bar is to protect defendants from the harassment of serialized prosecutions. Contemplating one trial, the prosecution sought to arraign defendant first on the charge of driving while under the influence. He entered no plea and asked to be arraigned on the centerline offense in an obvious attempt to make it a separate prosecution on a less serious offense to which he could plead guilty and thus become immune from further prosecution on the more serious charge. In effect, defendant asked for serialized prosecutions in order to gain immunity from the remaining charge. This is not according to the intent of the statute; it was intended to protect an accused, not to allow

him a procedural tool for the entrapment of a cooperative judiciary. While it is undesirable, in the interests of justice, to exaggerate the criminality of a person's conduct by allowing multiple punishment for multiple offenses arising out of the same behavioral incident, it is equally undesirable to allow a diminution of the criminality of the behavior by allowing a fragmentized prosecution at the request of the accused with each offense being tried apart from the context of the total criminal behavior.

We therefore hold that, by requesting a special kind of serialized prosecution, the defendant has waived his right to the statutory protection against multiple prosecutions. However, it does not follow that he has waived the protection against multiple punishment, also afforded by the statute, since this prohibition is based upon a distinct policy having a different objective.

It should be noted finally that a proper use of the statute contemplates one prosecution for all offenses resulting from a single behavioral incident with all such offenses charged as separate counts. In such a single prosecution, no plea or dismissal of any offense charged will prevent the prosecution from continuing until all offenses charged are disposed of.[17] Where separate charges are made in instances where the statute is applicable, we can conceive of no good reason why they should not be consolidated for trial. Although we deem it unnecessary to discuss the problem, we are inclined to believe that, absent any infringement of constitutional due process, a defendant does not have the right to separate trials, the discretionary authority therefor being vested solely in the court.[18]

■ Defendant further contends that § 609.04 prohibits further

_____

[17] People v. Tideman, 57 Cal. (2d) 574, 21 Cal. Rptr. 207, 370 P. (2d) 1007; United States v. Goldman (3 Cir.) 352 F. (2d) 263.

[18] Because multiple charges in a single indictment are new to this state, there are no cases specifically holding that granting separate trials is discretionary. However, Minn. St. 631.03, by granting separate trials to two or more defendants charged with felonies if requested, indicates that, absent a request, defendants may be tried jointly unless the court in its discretion orders otherwise. A fortiori, the question of separate trials for a single defendant charged with multiple offenses should be a matter for the discretion

prosecution in this case. Quite obviously, defendant's reliance on this statute is misplaced as neither offense in this case is a lesser degree of the other, an attempt, or a crime necessarily proved if the other were proved.

Writ discharged.

of the trial court. This view is in accord with Rule 14, Federal Rules of Criminal Procedure.