STATE of Minnesota, Respondent,

v.

James Raymond GILBERT, Appellant.

No. 46159.

Supreme Court of Minnesota.

Oct. 14, 1977.

336

C. Paul Jones, Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Richard G. Mark, Asst. Atty. Gen., Richard G. Evans, Gary Hansen, Sp. Asst. Attys. Gen., St. Paul, Helen Hill Blanz, County Atty., Grand Rapids, for respondent.

Heard before YETKA, SCOTT and STAHLER, JJ., and considered and decided by the court en banc.

THOMAS J. STAHLER, Justice.*

Defendant was convicted in Itasca County District Court of indecent liberties in violation of Minn.St.1974, § 609.296, subd. 1(2), and consensual sodomy in violation of Minn.St.1974, § 609.293, subd. 5,[1] and he appeals. We affirm the convictions but remand for a new sentence.

A brief statement of facts which led up to the criminal charges against defendant-appellant is necessary for a clear understanding of the issues involved in this appeal.

The defendant, age 22, on August 14, 1974, having done some drinking of alcoholic beverages during the day and having finished work, proceeded to the Alibi Tavern in Grand Rapids and drank beer. Later in the evening he went to the Rendezvous Tavern in Grand Rapids, where he met the complainant, Debbie Keppler, and her girl friend, Pam Garro. The young girls and defendant had known each other for some time. The defendant purchased several drinks for himself and the two girls during the course of the evening. At approximately midnight, the defendant, the two girls, and an unidentified young man left the Rendezvous Tavern in defendant's automobile for the purpose of the unidentified young man picking up his motorcycle at Coleraine and rejoining the defendant and

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

1. These statutes were repealed and were superseded by Minn.St. 609.341 to 609.351.

girls at Pengilly. After dropping the young man off at Coleraine, the defendant and two girls proceeded toward Pengilly, stopping some distance from Coleraine to wait for the young man. He did not arrive and defendant and the two girls, after drinking some beer in the vehicle, proceeded back to the Rendezvous Tavern, arriving at approximately 1:30 a. m. Not finding the young man there and learning that the Rendezvous and Mileage Taverns were closed, the defendant invited the two girls to view his new trailer home located on Split Hand Road. The girls consented upon defendant's promise to return them to Grand Rapids as soon as they had viewed the trailer home. They arrived at the trailer home at approximately 2:30 a. m. They entered the trailer home and for a short time engaged in a playful free-for-all wrestling. The two girls then went to the bathroom and upon their return to the living room the defendant suddenly grabbed the complainant and pulled her into a bedroom, closed the door, and proceeded to pull her hair and attempt to remove her clothes. When the complainant resisted, defendant threatened to blow her head off. According to complainant, the defendant by threat of force compelled her to perform oral sodomy and sexual intercourse. During this interlude, which occupied approximately 20 minutes, Pam Garro remained in the living room reading a magazine. When defendant had finished both he and complainant dressed and returned to the living room. Pam Garro, observing that the complainant appeared upset, inquired whether defendant had done something. The defendant then went into the bedroom and immediately returned carrying two hand guns. He proceeded to berate Pam Garro about her mother, pointing a hand gun at Pam Garro several times and threatening to kill her.

The complainant and Garro were, within a short time, able to calm the defendant to some extent, and he agreed to drive them back to Grand Rapids. Before leaving, defendant made several statements regarding killing other people and himself and fired three shots in the air. The defendant drove at high speed to the Rendezvous Tavern in Grand Rapids, where the two girls left his car at approximately 4 a. m., August 15. There the two girls met two male acquaintances and reported the events that had taken place at Split Hand; and approximately 20 minutes later reported their respective charges against the defendant to the sheriff. The defendant was arrested on August 15, 1974, and appeared before county court the following day, where the public defender was appointed to represent him. On September 19, 1974, after preliminary hearing, the defendant was bound over to district court by county court on the following complaints: Complaint No. 1 charging the defendant with Count 1, aggravated rape, and Count 2, aggravated sodomy, each against Debra Keppler; and complaint No. 2 charging the defendant with aggravated assault against Pam Garro. On September 30, defendant was arraigned on each complaint in district court and entered pleas of "not guilty" to each charge.

On November 26 and 27, 1974, the defendant was tried by jury on the charge of aggravated assault. He was found guilty and sentenced by the court to the commissioner of corrections for a period of not more than 5 years, to run concurrently with a prior sentence imposed on a conviction for the crime of unauthorized use of a motor vehicle.

On February 24, 1975, a *Rasmussen* hearing was held in respect to the aggravated rape and aggravated sodomy charge, after which hearing the court found no. double jeopardy and that certain blood and saliva samples, taken from the defendant after arrest and after a *Miranda* warning, were admissible in evidence in the forthcoming trial. On February 24 and 25, 1975, a jury trial was held on the aggravated rape and aggravated sodomy charges, and the jury found the defendant guilty of the lesser included offenses, to-wit: indecent liberties and consensual sodomy. On March 3, 1975, the defendant was sentenced under his conviction for indecent liberties to the commissioner of corrections for a minimum of 3 years and a maximum of 8 years, to be served consecutively to prior sentences. No

sentence was imposed for the defendant's conviction of the crime of consensual sodomy. The minimum term of 3 years was imposed pursuant to Minn.St.1974, § 609.11, and the maximum term of 8 years was imposed pursuant to Minn.St. 609.155 and 609.16 (extended sentence, habitual offender).

1–2. The defendant's first contention is that his protection against double jeopardy provided in Minn.St. 609.035 was violated by his being prosecuted separately for the aggravated assault charge and the charges of aggravated rape and aggravated sodomy.

Minn.St. 609.035, which is broader than the Federal constitution's double jeopardy protection, provides:

"Except as provided in section 609.585, if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."

The statute provides two types of protection, one against multiple punishment and another against serialized prosecution. If the statute is inapplicable with respect to protection against double punishment, it is also inapplicable with respect to double prosecution. *State v. Prudhomme,* 303 Minn. 376, 228 N.W.2d 243 (1975); *State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517 (1966). In determining whether a defendant may be prosecuted and punished for multiple offenses, the court must ascertain whether the conduct underlying the offenses was unitary or divisible. The test employed, when intent is an element of each offense, is whether the conduct involved was motivated by a desire on the part of the defendant to obtain a single criminal objective, or whether the motivation was divisible into two or more criminal objectives. *State v. Johnson, supra.*

Defendant contends that his conduct was motivated by a general hatred of women. This is novel, to say the least, and not the type of single criminal objective contemplated by *State v. Johnson, supra.* If we were to analyze every defendant's behavior from such a standpoint, many varied and otherwise unrelated crimes may be found to arise from a single psychological drive. The crimes of which defendant was accused were completely independent of each other, notwithstanding the fact that they occurred within a relatively brief period of time and at approximately the same location. Defendant had completed the sex offenses before the aggravated assault. It is clear that neither the sex crimes nor the assault was in furtherance of the other nor was the defendant's conduct motivated by a desire to obtain or accomplish a single criminal objective. Under the *Johnson* test, the crimes were not the result of a single behavioral incident, and Minn.St. 609.035 is therefore inapplicable.

3. Even if we assume that defendant's conduct was motivated by a single criminal objective, the crimes were committed against different victims. A defendant may receive multiple punishment on conviction of offenses committed against multiple victims, even though the offenses occurred at substantially the same time and place as part of a single behavioral incident. *State v. Prudhomme, supra; State ex rel. Stangvik v. Tahash,* 281 Minn. 353, 161 N.W.2d 667 (1968).

4. Defendant challenges the use of the extended sentencing statute in this case. Minn.St. 609.155 provides that in appropriate cases a defendant may be sentenced to the maximum term allowed for the particular offense committed multiplied by the number of prior felony convictions. Defendant, who had previously been convicted of unauthorized use of a motor vehicle, Minn.St. 609.55, subd. 2, and the aggravated assault on Pam Garro, Minn.St. 609.225, subd. 2, contends that an improper sentence resulted when the judge included the assault conviction in the number of prior felony convictions.

On February 25, 1975, defendant was convicted of the crime of indecent lib-

erties, which is punishable by imprisonment for a term of 4 years. The lower court invoked the provisions of Minn.St. 609.155 to double defendant's sentence to a term of 8 years, apparently concluding that defendant's two prior felony convictions necessitated the application of the extended term statute.

Minn.St. 609.155 provides in pertinent part:

"Subdivision 1. 'Extended term of imprisonment' means a term of imprisonment the maximum of which may be for the maximum term authorized by law for the crime for which the defendant is being sentenced multiplied by the number of his prior felony convictions, but not to exceed 40 years.

"Subd. 2. Whoever, having previously been convicted of one or more felonies, commits another felony other than murder in the first degree may upon conviction thereof be sentenced to an extended term of imprisonment * * *."

We must conclude that Minn.St. 609.155 was improperly relied upon in the imposition of the extended term of imprisonment. The statute authorizes an extended term for felony offenses committed after one or more prior felony convictions; the record in the instant matter indicates that the indecent liberties offense occurred chronologically prior to the conduct resulting in the aggravated assault conviction and is therefore not a "prior felony conviction" within the contemplation of the statute. We therefore remand for resentencing in this respect.

5. Defendant also assigns as error the application of the minimum sentencing statute, Minn.St.1974, § 609.11. The statute provided:[2]

"Subdivision 1. All commitments to the commissioner of corrections for imprisonment of the defendant are without minimum terms * * * except that any commitment following conviction wherein the defendant had in his possession a firearm or used a dangerous weapon at the time of the offense shall be for a term of not less than three years * * *. The offenses for which mandatory minimum sentences shall be served as herein provided are: aggravated assault, burglary, kidnapping, manslaughter, murder in the second or third degree, rape, robbery, sodomy, escape while under charge or conviction of a felony, or discharge of an explosive or incendiary device.

\* \* \* \* \* \*

"Subd. 2. The provisions of subdivision 1 shall apply to informations and indictments charging any offense enumerated therein which allege possession of the firearm or use of the weapon and cite this section."

Although defendant was charged with aggravated rape and aggravated sodomy, he was convicted of indecent liberties and consensual sodomy, which are not among the offenses enumerated in § 609.11, subd. 1.[3] The state argues that § 609.11 should apply because defendant was *charged* with an enumerated offense, and subd. 2 therefore makes the statute applicable. We find no merit in this argument. The purpose of subd. 2 is to require that reasonable notice be given a defendant of the possible application of the minimum sentencing statute. As such, it is a prerequisite to the imposition of a minimum sentence. It in no way affects the obvious requirement that the defendant must be convicted of one of the enumerated offenses. We therefore conclude that the sentence was improper and the case must also be remanded[4] for new

2. The statute has since been amended.

3. Although Minn.St. 609.11, subd. 1, includes "sodomy," consensual sodomy, being a distinct and separate statutory offense, was obviously not intended to come within its scope.

4. Pursuant to the original opinion of this court filed on July 8, 1977, the matter was remanded to the trial court with instructions that it eliminate the mandatory 3-year minimum term. In accordance therewith, on August 4, 1977, the trial court set aside defendant's sentence of 3 to 8 years and imposed a sentence of 0 to 4 years.

sentencing eliminating the minimum sentence.[5]

■ 6. Defendant claims it was error to admit evidence derived from blood and saliva samples taken while he was in custody and without a search warrant. After his arrest, a deputy requested a blood sample and explained that it was to be used for identification purposes. Defendant either indicated consent in some affirmative manner or passively, but he did not object. He was taken to a hospital, where he cooperated with the nurse who took the blood sample. He also complied when asked to spit into a tissue paper for a saliva sample. Defendant apparently was not explicitly told that he could refuse to give the samples, although he was given a *Miranda* warning.

■ While a search warrant is normally required for the taking of blood, a defendant can waive his Fourth Amendment rights by consenting to the search.[6] *State v. Campbell,* 281 Minn. 1, 161 N.W.2d 47 (1968). In the *Campbell* case we held that the admission of a blood sample was proper despite defendant's claimed misunderstanding of the request for a sample if the police officers could have reasonably believed his consent to be genuine. Where the trial court upon *Rasmussen* hearing rules that the taking of samples was voluntary, and the record reasonably supports that ruling, the trial court's finding will not be reversed upon review unless clearly erroneous or contrary to law. *In re Trust Known as Great Northern Iron Ore Properties,* Minn., 243 N.W.2d 302 (1976); *In re Estate of Balafas,* 302 Minn. 512, 225 N.W.2d 539 (1975); *State v. Collins,* 276 Minn. 459, 150 N.W.2d 850 (1967). In this case we believe the evidence reasonably supports the trial court's finding that de-

fendant voluntarily consented to give the blood and saliva samples.

■ 7. Defendant claims it was error to be called to the stand as a rebuttal witness for the prosecution. Initially at trial defendant testified out of order because one of the state's witnesses had not yet arrived. At the end of the state's cross-examination there was a short recess. After the recess the state wanted to cross-examine defendant further. The trial court refused to allow further cross-examination, observing that the state could call defendant on rebuttal. Defendant made no objection at that time. The state's remaining witness then gave undisputed testimony concerning the results of the blood and saliva tests. Both parties then rested, the defendant being the only defense witness. Defendant was then called by the state and asked only one question concerning a prior statement about what he had been drinking on the evening in question.

■ There is no contention that the evidence elicited was inadmissible. Defense counsel only objected when defendant was called to the stand but did not object when the trial court first indicated that the state could call defendant on rebuttal. While it would clearly be a violation of defendant's Fifth Amendment rights to call defendant as the state's rebuttal witness for the purpose of weakening his defense,[7] we do not believe a fair reading of the record compels that conclusion. Rather, we believe that, despite the trial court's erroneous invitation to constitutional error, the defendant was simply recalled to complete the state's cross-examination, interrupted in furtherance of a trial judge's obligation to avoid delays and accommodate witnesses. See, A. B. A. Standards for Criminal Justice, The Function of the Trial Judge, § 1.4.

---

**5.** Defendant does not claim that on the facts of this case he was not in possession of a firearm. The trial court found that he was in "constructive possession" of the guns at the time of the sex offenses. Inasmuch as we conclude that the minimum sentence was improper on other grounds, we need not decide whether a finding of constructive possession will invoke the statute.

**6.** See, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1968), where, a blood sample taken under exigent circumstances from the accused was held to be an appropriate incident to a lawful arrest.

**7.** 6 Wigmore, Evidence (Chadbourn Rev.) § 1873.

8. On cross-examination of defendant, the state, by mistake, attempted to impeach his testimony with the prior felony conviction of another James Gilbert. The trial judge immediately stopped this inquiry and pointed out the mistake to the attorneys and the jury. There is no evidence that this action by the prosecutor was anything but an honest error. Defendant made no objection to the trial court's handling of the situation. Under these circumstances, we find defendant was not prejudiced by this incident. *State v. Collins, supra.*

9. After the jury had eaten lunch on the last day of trial and the judge had given his instructions, the jury retired at about 12:40 p. m. The jury returned three times for additional instructions concerning the distinction between indecent liberties and rape, the last of these occasions being at 11 p. m. At that time the court was concerned that the jurors had not eaten dinner, and asked if they were near a verdict. The foreman initially stated that they were "hung up," but after the court gave additional clarifying instructions, the jurors indicated that they wanted to deliberate further. Defendant and his counsel were asked whether this procedure was satisfactory, and both responded affirmatively. The jury returned its verdict at 11:20 p. m.

Defendant's consent to these procedures bars his objection on appeal. There is no evidence of coercive activity on the part of the court and the mere fact that the jury deliberated for nearly 11 hours without food is not grounds for reversal on a claim of a coerced verdict.

Defendant's several other claims of error are found to be without merit, and his convictions are therefore affirmed.

As the trial court has already modified the original sentence imposed in accordance with the principles set forth herein, the convictions are affirmed subject to the modifications noted, *supra.* The opinion filed herein on July 8, 1977, is withdrawn and the foregoing substituted in its place, and the petition for rehearing is denied.

Affirmed in part and reversed in part.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.