STATE of Minnesota, Respondent,

v.

Charles Elmer MULLEN, pet., Appellant.

No. C5–96–2096.

Supreme Court of Minnesota.

April 30, 1998.

Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., Alan L. Mitchell, St. Louis County Atty., for respondent.

## OPINION

STRINGER, Justice.

Appellant Charles Elmer Mullen was originally charged in a three count complaint with first-degree burglary, fifth-degree assault, and providing a false name to a peace officer, all related to a fracas in the early morning of April 9, 1995 when appellant broke into his ex-girlfriend's apartment, ripped the phone out of the wall and struck her in the face several times. Trial was scheduled on these charges for April 2, 1996, but in the meantime, additional charges were filed against him for conduct in early March 1996 when he made repeated telephone calls to his ex-girlfriend, smashed in the window of her car, and made threats to her of physical injury. For this conduct, appellant was charged with third-degree criminal damage to property, first-degree tampering with a witness and engaging in a pattern of harassing conduct. The complaints were joined for trial and the jury returned a verdict of not guilty on the witness tampering charge, but guilty of fifth-degree assault, first-degree burglary, criminal damage to property, and pattern of harassing conduct. On appeal, the court of appeals concluded that appellant's sentence on the criminal damage to property conviction exceeded the statutory limits and remanded on that issue but affirmed the convictions on all other charges. We affirm in part and reverse in part.

Appellant dated Deborah Ellefson for almost two years prior to April 1995. On April 9, 1995, a few days after ending their relationship, appellant thought that Ellefson had left their regular bar with another man. Appellant went to Ellefson's apartment building and buzzed her on the security intercom, asking to be let in. Ellefson refused but apparently someone else let appellant in the building. When appellant knocked on Ellefson's door, she told him she would not let him in and did not want to speak with him that evening. He then threatened to break down the door if she did not let him in, and when she refused he kicked the door in breaking the lock. Ellefson reached for the telephone but appellant ripped it out of the wall, and Ellefson screamed for help. A report of a domestic disturbance was called in to 911 at 2:11 a.m. The police arrived and placed appellant in custody. Ellefson was crying and shaking and told the police that appellant had slapped her.[1] The police offi-

---

1. At trial, Ellefson testified that she remembered her nose hurting, but did not remember appel-

cer at the scene testified that appellant initially denied but then admitted slapping Ellefson. When he was arrested appellant gave his brother's name and birthdate instead of his own. He was charged with first-degree burglary, Minn.Stat. § 609.582, subd. 1(a)(c) (1996), fifth-degree assault, Minn.Stat. § 609.224 (1996), and giving a false name to a peace officer, Minn.Stat. § 609.506, subd. 2 (1996), as a result of the April 9 incident. Trial was scheduled for April 2, 1996.

In the interim, Ellefson and appellant reconciled but the relationship ended again in January 1996. Ellefson testified that in the weeks before the April 2 trial date appellant repeatedly asked her to testify that she did not remember the events of April 9, 1995. He also threatened that she "would be sorry if he went to jail," "if he did any jail time over this, he would kill [her]" and she "would get what [she] deserves." On March 11, 1996, two weeks before appellant's scheduled trial date, Ellefson received four or five telephone calls late in the evening from appellant accusing her of turning his new girlfriend against him. Ellefson denied it and took the telephone off the hook. In the early morning hours of March 12 a neighbor pounded on Ellefson's door and told her that the back window of Ellefson's automobile had just been broken. Ellefson called 911 but before the police arrived she received another call from appellant telling her that she "wouldn't make it through next week."

Two of Ellefson's neighbors whose apartments face the parking lot testified as to what they saw on March 12, 1996. Amy Berg testified that she was awake and tending to her infant son when she heard a loud crash. She went to the window and saw a rusty truck pulling out of the parking lot. Terry Atkinson testified that she was standing in front of her window smoking a cigarette when she heard a crash. She looked up and saw a tall man jump into a blue truck covered with rust or primer spots and drive away up Bristol Street. Based on the neigh-

bors' statements to the police on the night of the incident, a patrol car proceeded to 6011 Bristol Street where appellant was living at the time and a silver or light blue truck with rust and primer spots was located. The radiator was warm to the touch but no one responded to the police officers' knocking at the door of the house. The day after her car window was broken Ellefson received another telephone call from appellant offering to pay for replacement of the window and explaining that he "was really drunk" and "barely even remember[ed] doing it." A few days later appellant learned there was a warrant out for his arrest and he turned himself in.

In connection with the March 1996 incident, the St. Louis County Attorney charged appellant with stalking and a pattern of harassing conduct, Minn.Stat. § 609.749, subd. 1, subd. 2(1)(2)(3)(4)(5) with reference to subd. 5(a); first-degree tampering with a witness, Minn.Stat. § 609.498, subd. 1(a) (1996); and third-degree criminal damage to property, Minn.Stat. § 609.595, subd. 2(a) (1996). The trial court granted the state's motion for joinder of the April 1995 and March 1996 charges at one trial. The defense did not oppose the motion. Appellant pled guilty to the charge of giving a false name to a peace officer but went to trial on the other charges on May 22, 1996.

At trial, the state was required to prove the specific elements of burglary, assault, witness tampering, and criminal damage to property. As to pattern of harassment, the state was required to prove two levels of statutory violation. First, the state had to show that appellant committed two or more acts that constituted stalking under § 609.749, subd. 2, and second, the state had to show that those two or more acts occurred within a five year time frame, against the same victim, in a manner that would cause a reasonable person to feel terrorized or to fear bodily harm and actually caused that reaction in the victim.[2]

lant hitting her.

**2. 609.749 Harassment; Stalking; Penalties.**
    Subdivision 1. **Definition.** As used in this section, "harass" means to engage in intentional conduct in a manner that:

*(1)* would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and
*(2)* causes this reaction on the part of the victim.

Appellant testified in his defense at trial and described his and Ellefson's conduct as "little kid's games," claiming that both he and Ellefson telephoned each other and argued, or telephoned each other and hung up. Although he admitted kicking in her door in April 1995, he denied hitting her. He also denied making threats to her about her testifying but admitted that he broke her car window. He testified that he broke the car window because "[s]he was harassing me, and I had enough." Appellant characterized his and Ellefson's relationship as mutual harassment, stating that "we pretty much harassed each other * * * throughout the two years of going out with each other."

Several issues were raised at trial regarding the phrasing and content of the jury instructions. As to the pattern of harassment charge, defense counsel argued that the words "oppressed" and "persecuted" should be removed from the jury instruction for stalking because they "are social terms, not really legal terms." *See* 10A Minn. Dist. Judges Ass'n, *Minnesota Practice*, CRIM-JIG 24.57 (3d ed. Supp.1997). The court disagreed and denied the defense motion. The attorneys and the court also discussed what time period should be considered for telephone calls to constitute harassment under § 609.749, subd. 2(4) and (5) and the

court held that the time period for telephone calls should be limited to March 1996.

The issue was also raised as to the time periods that should be considered for the pattern of harassment charge under § 609.749. The state argued to include the conduct in April of 1995 as part of the pattern of harassment; the defense objected because the complaint only alleged pattern of harassment in March 1996. The defense eventually agreed to the instruction but argued that by giving the instruction the prosecution was conceding that defendant's conduct on all charges would constitute one offense and that therefore defendant could not be sentenced on each separate offense. The jury was thereupon instructed to consider "April 1995 and/or March 1996" for the purpose of deciding whether appellant "directly or indirectly manifested a purpose or intent to injure the person, property or rights of Debra Mary Ellefson by the commission of an unlawful act" under subdivision 2, section 1 of Minn.Stat. § 609.749.

Under the stalking statute, the predicate conduct for pattern of harassment can be proven by two or more violations of either § 609.749, subd. 2—the crime of stalking, or of the ten other criminal statutes listed in § 609.749, subd. 5(b), which include burglary, assault, and criminal damage to property.

Subd. 2. **Harassment and stalking crimes.** A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor:

(1) directly or indirectly manifests a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act;

(2) stalks, follows, or pursues another;

(3) returns to the property of another if the actor is without claim of right to the property or consent of one with authority to consent;

(4) repeatedly makes telephone calls, or induces a victim to make telephone calls to the actor, whether or not conversation ensues;

(5) makes or causes the telephone of another repeatedly or continuously to ring;

(6) repeatedly uses the mail or delivers or causes the delivery of letters, telegrams, packages, or other objects; or

(7) engages in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty.

\* \* \* \*

Subd. 5. **Pattern of harassing conduct.** (a) A person who engages in a pattern of harassing

conduct with respect to a single victim or one or more members of a single household in a manner that would cause a reasonable person under the circumstances to feel terrorized or to fear bodily harm and that does cause that reaction on the part of the victim, is guilty of a felony and may be sentenced to imprisonment for not more than ten years or to payment of a fine not more than $20,000, or both.

(b) For purposes of this subdivision, a "pattern of harassing conduct" means two or more acts within a five-year period that violate the provisions of any of the following:

(1) this section;

(2) section 609.713;

(3) section 609.224;

(4) section 609.2242;

(5) section 518B.01, subdivision 14;

(6) section 609.748, subdivision 6;

(7) section 609.605, subdivision 1, paragraph (b), clauses (3), (4), and (7);

(8) section 609.79;

(9) section 609.795;

(10) section 609.582; or

(11) section 609.595.

In appellant's case the pattern offense charged only included conduct under section 609.749, subd. 2—the stalking statute—and the jury was so instructed: [3]

> First, the defendant engaged in a pattern of harassing conduct. A pattern of harassing conduct means two or more acts within a five-year period *that constitute the crime of harassment and stalking.* (Emphasis added.)

The court went on to instruct on the other elements of pattern harassment.[4] During deliberations the jury submitted a question to the court regarding what time period it should consider for the pattern of harassment charge. The state argued that the April 1995 conduct should be included in the pattern of harassing conduct; the defense reiterated its argument that the complaint charging the harassment statute was limited to March 1996. As a result of the second discussion, the court instructed the jurors that they should consider both periods of time: "defendant's acts took place on or about April 9, 1995 and/or March 1996, however, one or more of the acts must have taken place in March of 1996."

The jury returned guilty verdicts on all charges except witness tampering. Appellant was sentenced to 180 days for giving a false name to a peace officer, 90 days for assault, 180 days for criminal damage to property,[5] and departed downward from the sentencing guidelines to 22 months for burglary and 26 months for pattern of harassing conduct. The sentences were to run concurrently.

On review by the court of appeals, the convictions were affirmed but the court remanded for resentencing on the fourth-degree criminal damage to property sentence because the trial court sentenced appellant to 180 days when 90 days was the maximum for a misdemeanor. The court rejected appellant's challenge to the jury instructions regarding both specific intent and the time periods to be considered for a pattern of harassment. As to the jury instructions on specific intent, the court applied our decision in *State v. Orsello,* 554 N.W.2d 70 (Minn.

\* \* \* \*

3. The jury instruction included the elements of stalking, § 609.749, subd. 1 and subd. 2(1)(2)(3)(4)(5) and (7):

First, the defendant

(1) directly or indirectly manifested a purpose or intent to injure the person, property, or rights of Debra Mary Ellefson by the commission of an unlawful act during April 1995 and/or March 1996; or

(2) stalked, followed or pursued Debra Mary Ellefson; or

(3) returned to the property of Debra Mary Ellefson without claim of right to the property or consent of one with the authority to consent; or

(4) repeatedly made telephone calls during March of 1996, or induced another to make telephone calls to Debra Mary Ellefson, whether or not conversation ensued; or

(5) made or caused the telephone of Debra Mary Ellefson repeatedly or continuously to ring during March of 1996; or

(6) engaged in harassing conduct that interfered with Debra Mary Ellefson or intruded on her privacy or liberty.

Second, defendant intended to harass Debra Mary Ellefson. To "harass" means to engage in intentional conduct that would cause a reasonable person under the circumstances to feel oppressed, persecuted or intimidated and caused this reaction on the part of Debra Mary Ellefson.

Third, defendant's acts took place during March, 1996 in St. Louis County.

If you find that each of these three elements has been proven beyond a reasonable doubt, then you may find the first element of the crime of Pattern Harassment as defined by the Court for you to have been established provided you find by proof beyond a reasonable doubt two or more such acts by defendant directed toward Debra Mary Ellefson occurred within a five year period. If you find that any element has not been proven beyond a reasonable doubt, you may not find the first element of the crime of Pattern Harassment has been established beyond a reasonable doubt.

4. The court instructed the jury as follows on the other four elements of pattern harassment:

Second, the defendant engaged in this conduct with respect to Debra Mary Ellefson.

Third, the defendant acted in a manner that would cause a reasonable person under the circumstances to feel terrorized or to fear bodily harm.

Fourth, Debra Mary Ellefson felt terrorized or feared bodily harm as a result of defendant's conduct.

Fifth, the defendant's acts took place during March 1996 in St. Louis County.

5. The court reduced the third-degree criminal damage to property charge to fourth-degree criminal damage to property based on the evidence of monetary value presented at trial.

1996), retroactively but held that *Orsello* did not require proof of specific intent for subdivision 5. The court further held that appellant waived the due process issue regarding inclusion of the April 1995 conduct in the pattern of harassment instructions by agreeing to include April 1995 in another earlier instruction. The court also rejected appellant's argument that the trial court erred in sentencing him for a pattern of harassment and the underlying acts, holding that the underlying acts of the pattern occurred at different times and places and did not involve a single criminal objective—therefore appellant could be sentenced separately on these convictions without violating Minn.Stat. § 609.035 (1996), which proscribes more than one sentence for the same course of conduct.

■ The first issue we consider is appellant's allegation that the trial court erred by not requiring proof of specific intent to establish a pattern of harassing conduct under § 609.749, subd. 5. The jury was instructed that it must find two or more acts under § 609.749, subd. 2, to establish a pattern of harassing conduct. Appellant concedes that the jury instructions for acts under subdivision 2 did require proof of specific intent on the stalking charge—"Second, that defendant intended to harass Debra Mary Ellefson"— but argues that subdivision 5 requires a second layer of specific intent for a pattern of harassing conduct: the intent to make a victim feel terrorized or fear bodily harm. Appellant asserts that it would be incongruous to require the state to prove that a defendant had specific intent to cause the victim to feel oppressed, persecuted, or intimidated for individual misdemeanor offenses but not require the state to prove that a defendant had the intent to cause a victim to feel terrorized or to fear bodily harm for the felony offense pattern of harassing conduct. We disagree.

In *Orsello*, we held that the legislature must have intended that § 609.749, subdivisions 1 and 2 require specific intent to prove a violation because "to read the statute as a coherent whole requires that stalking be a specific intent crime." *Orsello*, 554 N.W.2d at 76. We concluded that while none of the

language that references specific intent was present in section 609.749, such as "intentionally," "with intent to," or "know," the legislature must have intended to require specific intent because of the "peculiar drafting" of subdivision 1, using the phrase "intentional conduct in a manner that," and subdivision 2 listing descriptions of conduct that constitute stalking without reference to their criminal code counterparts. *Orsello*, 554 N.W.2d at 73–74. This rationale, however, does not apply to subdivision 5. The language of subdivision 5 includes the phrase "in a manner that" without any mention of "intentional conduct"—the phrase serves merely as a connection between the harassing conduct and the fear experienced by the victim as a reasonable person.

Further, our observations in *Orsello* that the conduct described in subdivision 2 had criminal code counterparts requiring specific intent, and that it would be incongruous "[t]o conclude that conviction of a crime, based on identical behavior, requires one level of intent under one statutory provision and another level of intent under [another]" do not apply here. *Orsello*, 554 N.W.2d at 75. Unlike subdivision 2, subdivision 5 specifically cites to criminal code sections, thus obviating the incongruity.

■ Finally, the nature of the offense in subdivision 5 is commission of a *pattern* of offenses—two or more acts within 5 years targeting the same individual or household. Thus our concern in *Orsello* that not requiring specific intent could lead to an "accidental" stalking is vastly diminished. We thus conclude that section 609.749, subdivision 5, requires only general intent.

■ We next turn to appellant's contention that he was denied due process because the complaint charging pattern of harassment did not include the April 1995 conduct, yet at trial the jury was permitted to consider the April 1995 acts as part of a pattern of harassment. Appellant asserts that this discrepancy violates the requirements of specificity in criminal pleading[6] and that had he

---

**6.** To support a conviction, an indictment "must fairly apprise the defendant of the charge

brought against him, * * * [so] that he might properly prepare his defense, and so that he is

known the April 1995 conduct would be included for the pattern of harassing conduct offense, he would not have agreed to joinder of the two trials.

The state asserts that appellant waived this issue by agreeing at trial to inclusion of the April 1995 conduct as a trial strategy. After appellant noted his contention that including both April 1995 and March 1996 time periods would constitute a concession that all appellant's conduct was one behavioral incident for sentencing purposes,[7] he agreed to the dates "April 1995 and/or March 1996" for the instruction.

When the jury sent the court a note inquiring as to "Pattern of Harassment—are we allowed to include 5 years of time or do we just use the March 1996 time period as addressed in point 5?"—the court and the attorneys noted for the first time the inconsistency between the time periods instructed for the stalking charge and the time period instructed for the pattern of harassment charge. Defense counsel objected to including both time periods, but offered as "a proposal to resolve this," that the instruction read "one or more of the acts must have taken place in March of 1996." The state agreed and the court amended the instruction to include "on or about April 9, 1995 and/or March 1996, however one or more of the acts must have taken place in March 1996." The court noted that the defendant was not prejudiced because § 609.749, subd. 5 allows the pattern to include violations from the last 5 years and the instructions were thus more favorable to appellant than the statute required.

Minnesota Rule of Criminal Procedure 17.05 allows the court to "permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Because § 609.749, subd. 5 provides for a

more expansive time period than was finally charged to the jury here we find no prejudice to appellant in the revised instruction.

■■■ We turn now to appellant's argument that the trial court erred in imposing separate sentences for burglary, assault, criminal damage to property—and a pattern of harassing conduct. Our concern is that Minn.Stat. § 609.035, subd. 1 (1996), provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses * * * ." Section 609.035 lists several exceptions to this rule, including other crimes committed during such offenses as kidnapping or burglary, but where a specific exception does not apply, determination of whether two or more crimes are part of a single behavioral incident requires examination of the time and place of the offenses and whether the defendant "was motivated by an effort to obtain a single criminal objective." *State v. Johnson*, 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966). The purpose of section 609.035 is to protect a defendant convicted of multiple offenses against unfair exaggeration of the criminality of his conduct. *See Johnson*, 273 Minn. at 399–400, 141 N.W.2d at 522.

Because section 609.035 lists an exception for crimes committed during a burglary, Minn.Stat. § 609.585 (1996), appellant's separate sentences for his April 1995 conduct does not violate the prohibition against multiple sentences. No exception applies, however, to appellant's March 1996 conduct, and unity of time, place, and criminal objective exists between the criminal damage to property charge and the acts of stalking in March 1996. Appellant's March 1996 conduct constitutes a single behavioral incident because the telephone calls and breaking of the window occurred within a few hours and were motivated by a continuous intent to harass Ellefson. Thus we conclude that appellant

---

protected from subsequent prosecution for the same offense." *State v. Wurdemann*, 265 Minn. 92, 94, 120 N.W.2d 317, 318 (1963).

7. Defense counsel stated:
    I would like to point something out now. I am going beyond this, but I want to make it clear, if my client is convicted of all this stuff, I am

going to argue that the county attorney has conceded it's one behavioral incident by putting in that the burglary and the assault are the harassment. Then I am going to argue that he cannot receive separate sentences for burglary and assault here and harassment because he is saying that one created the other.

could not be sentenced for criminal damage to property and a pattern of harassing conduct relating to his conduct in March 1996, and appellant's sentence for criminal damage to property must be vacated.

Finally, we consider what effect our decision in *State v. Machholz,* 574 N.W.2d 415 (Minn.1998), holding § 609.749, subd. 2(7) unconstitutional, has on appellant's convictions. In *Machholz* we held that subdivision 2(7) of Minn.Stat. 609.749 (1996), a "catch-all" providing that harassment includes "any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty," is unconstitutionally overbroad both facially and as applied. *Id.* at 421. The general rule when the court overrules a rule of law is that "the new rule is applied to the case before the court and to claims arising after the date of the overruling decision," but when the court finds a statute unconstitutional, "the statute is not a law; it is just as inoperative as had it never been enacted." *McGuire v. C & L Restaurant Inc.,* 346 N.W.2d 605, 614 (Minn. 1984).

Here appellant was charged under § 609.749, subd. 2(1)(2)(3)(4)(5) with reference to subd. 5(a), and was not charged under subdivision 2(7), but at the close of trial the court instructed the jury on subdivision 5 and required two or more acts under subdivision 2, subsections (1), (2), (3), (4), (5),—*and (7).* No objection was made to the instructions and it is not clear from the record why the instructions included subdivision 2(7). In effect then, when the trial court instructed on subdivision 2(7), it erred, because it was a law that had never been enacted. We conclude however, that the error was harmless beyond a reasonable doubt. The specific conduct for which appellant was charged and largely admitted by him fits clearly and cleanly within § 609.749, subd. 2(1) through (5) and there is no reasonable possibility that appellant's conviction could have been based on an erroneous instruction. The verdict was "surely unattributable to the error." *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997) (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 278–82, 113 S.Ct. 2078, 2081–83, 124 L.Ed.2d 182 (1993)).

In summary, we conclude that the pattern of harassing conduct provision, Minn.Stat. § 609.749, subd. 5, does not require specific intent; appellant was not denied due process by the trial court allowing the jury to consider both April 1995 and March 1996 conduct to establish a pattern of harassing conduct; the trial court erred in imposing separate sentences for the criminal damage to property and pattern of harassing conduct convictions and the criminal damage to property sentence must therefore be vacated; and the inclusion of the catch-all provision, Minn.Stat. § 609.749, subd. 2(7), in the jury instructions was harmless error.

Affirmed in part and reversed in part.

BLATZ, C.J., took no part in the consideration or decision in this case.