2006 ND 169

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Sharol Kaye SALVESON, Defendant and Appellant.**

**Nos. 20060015, 20060016.**

Supreme Court of North Dakota.

July 27, 2006.

Tom P. Slorby, Minot, ND, for defendant and appellant.

Rozanna C. Larson, Assistant State's Attorney, Minot, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Sharol Salveson appeals from criminal judgments entered following her pleas of guilty to driving under the influence and aggravated reckless driving, both class A misdemeanors. She was sentenced to two consecutive one-year sentences with three months suspended. On appeal, she argues she received an illegal sentence. We conclude Salveson's convictions for driving under the influence and aggravated reckless driving involve substantially different criminal objectives and the trial court was within its discretion imposing two consecutive one-year sentences. We affirm.

I

[¶ 2] On April 3, 2005, Salveson was charged with driving under the influence and aggravated reckless driving, both class A misdemeanors, and driving while license privileges were under suspension or revocation, a class B misdemeanor. Previously, Salveson had been convicted of driving under the influence on December 26, 2001

and July 23, 2004. The current charges arose while Salveson was driving with a blood-alcohol level of .26%. While driving drunk, Salveson hit two children who were walking their bicycles down a county road. One, a fifteen-year-old boy, suffered extensive injuries from the accident. His leg was left in a mangled state. His mother testified the boy was currently confined to a wheelchair. The child's family incurred over $43,000.00 in medical expenses.

[¶ 3] Salveson attempted to negotiate a plea bargain with the State that would limit her jail time to between six and nine months. The district court rejected the recommended sentences. On December 13, 2005, Salveson pled guilty to aggravated reckless driving and driving under the influence. The State dismissed a charge of driving with a suspended license. The case proceeded to sentencing. The district court reviewed the sentencing factors found in N.D.C.C. § 12.1–32–04, concluding several factors weighed heavily in favor of a lengthy sentence. The court sentenced Salveson to twelve months incarceration and ordered her to pay $43,796.77 in restitution for the aggravated reckless driving charge. Following that sentence, Salveson was sentenced to another twelve months, with three months suspended, for the driving under the influence charge. The two sentences were to run consecutively meaning Salveson was to be incarcerated for two years, with three months suspended. Salveson appeals her sentence arguing a two-year sentence following a DUI and aggravated reckless driving conviction constitutes an illegal sentence.

II

[¶ 4] A trial court is allowed the widest range of discretion in criminal sentencing. *State v. McClean*, 1998 ND 21, ¶ 4, 575 N.W.2d 200. Within this discretion, a trial court has the authority to determine whether a sentence should run concurrent with or consecutive to another sentence. *State v. Ulmer*, 1999 ND 245, ¶ 4, 603 N.W.2d 865. This discretion is limited by statute when imposing consecutive sentences for multiple misdemeanor convictions:

When sentenced only for misdemeanors, a defendant may not be consecutively sentenced to more than one year, except that a defendant being sentenced for two or more class A misdemeanors may be subject to an aggregate maximum not exceeding that authorized by section 12.1–32–01 for a class C felony if each class A misdemeanor was committed as part of a different course of conduct or each involved a substantially different criminal objective.

N.D.C.C. § 12.1–32–11(3).

[¶ 5] This statute authorized the district court to sentence Salveson to consecutive terms of incarceration for two class A misdemeanor convictions if each misdemeanor was committed "as part of a different course of conduct" or if each misdemeanor "involved a substantially different criminal objective." N.D.C.C. § 12.1–32–11(3). Salveson's two crimes were a part of the same course of conduct. However, the district court concluded the crimes of aggravated reckless driving and DUI involved different criminal objectives. In making this determination, the district court relied on this Court's interpretation of "substantially different criminal objectives" in *Ulmer*, 1999 ND 245, ¶ 10, 603 N.W.2d 865.

[¶ 6] Exactly what the legislature meant when it included the phrase "criminal objective" in the statute is ambiguous. We concluded such in *Ulmer*, where we reviewed the relevant legislative history leading up to the enactment of N.D.C.C. § 12.1–32–11(3). *Ulmer*, at ¶¶ 9–10.

From our review of the relevant legislative history, a unanimous court held:

> under N.D.C.C. § 12.1–32–11(3), multiple class A misdemeanor offenses may be deemed by the sentencing court to involve substantially different criminal objectives if they do not fall under one of the following three categories: (1) one offense is an included offense of the other; (2) one offense consists of a conspiracy, attempt, solicitation, or other form of preparation to commit, or facilitation of, the other; or (3) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

*Ulmer*, at ¶ 10. In *Ulmer*, we concluded the crimes of driving with a suspended license and driving while under the influence constituted two crimes with substantially different criminal objectives. *Id.* at ¶ 7. The same analysis from *Ulmer* applies in this case.

[¶ 7] As in *Ulmer*, we look to the elements of the crimes to determine whether they invoke separate criminal objectives. The essential elements of DUI are driving a motor vehicle on a public way while under the influence of intoxicating liquor. *Ulmer*, at ¶ 7. The essential elements of aggravated reckless driving are driving with reckless disregard for the safety of others or driving without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or the property of another, and inflicting injury upon the person of another. N.D.C.C. § 39–08–03. Each offense involves separate and distinct violations of the law and separate criminal objectives the legislature sought to proscribe. To conclude otherwise would mean the separate act of inflicting injury upon pedestrians while driving recklessly is without consequence.

[¶ 8] The crimes of DUI and aggravated reckless driving do not relate to each other under any of the three categories announced in *Ulmer*. This is not a case of an included offense such as being charged for reckless driving and aggravated reckless driving for the same conduct. This is not a case of being charged with a crime and an inchoate version of the crime such as conspiracy, attempt, or other form of preparation to commit the crime. Nor is this a case that prohibits generally the same conduct prohibited specifically by the other. None of the three categories announced in *Ulmer* apply in this case.

[¶ 9] Aggravated reckless driving requires a separate act of inflicting "injury upon the person of another." N.D.C.C. § 39–08–03. Salveson's separate act of hitting two pedestrians, mutilating the leg of one of them, is more than merely reckless drunk driving. The act of inflicting injury constitutes a separate and distinct act to support the aggravated reckless driving charge. This separate act evidences a new "substantially different criminal objective." N.D.C.C. § 12.1–32–11(3). Therefore, N.D.C.C. § 12.1–32–11(3) did not limit the district court's discretion to sentence Salveson to only one year. The district court did not abuse its discretion in sentencing Salveson to two consecutive one-year sentences with three months suspended for committing two class A misdemeanors.

### III

[¶ 10] We conclude the definition of "substantially different criminal objectives" announced in *State v. Ulmer*, 1999 ND 245, ¶ 10, 603 N.W.2d 865, is controlling in this case. Applying that definition, we conclude the crimes of DUI and aggravated reckless driving constitute substantially different criminal objectives. We affirm.

[¶ 11] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, J., concur.

MARING, Justice, dissenting.

[¶ 12] I respectfully dissent. I believe the majority is too invested in its own opinion in *State v. Ulmer*, 1999 ND 245, 603 N.W.2d 865, to recognize that, although achieving the correct result, a portion of our decision in that case is directly contrary to the legislative history behind N.D.C.C. § 12.1–32–11(3). Legislative history that, by our own admission in *Ulmer*, we sought to honor. 1999 ND 245, ¶¶ 9–10, 603 N.W.2d 865. Nevertheless, the majority grasps, in the name of "precedent," to retain a contradictory test completely divorced from the legislative history surrounding the language of the statute being interpreted. Because I believe consecutive sentencing in a case such as this is precisely what the drafters of N.D.C.C. § 12.1–32–11(3) intended to avoid, I would reverse and remand for resentencing.[1]

[¶ 13] Section 12.1–32–11(3), N.D.C.C., limits the power of a trial court to impose consecutive sentences for multiple misdemeanors in certain cases.

> When sentenced only for misdemeanors, a defendant may not be consecutively sentenced to more than one year, except that a defendant being sentenced for two or more class A misdemeanors may be subject to an aggregate maximum not exceeding that authorized by section 12.1–32–01 for a class C felony if each class A misdemeanor was committed as part of a different course of conduct or each involved a substantially different criminal objective.

N.D.C.C. § 12.1–32–11(3). The statute allows a trial court to impose consecutive sentences for multiple class A misdemeanors if they each involve substantially different criminal objectives or are each committed as a part of a different course of conduct.

[¶ 14] The majority, at ¶ 6, remains flummoxed by the phrase "criminal objective," in spite of the fact that in *Ulmer* we correctly equated "criminal objective" with "criminal intent." 1999 ND 245, ¶ 7, 603 N.W.2d 865; *see also, e.g., State v. Cooper*, 2002 WL 31891013, *7, 2002 Minn.App. LEXIS 1438, *19; *State v. Garza–Villarreal*, 123 Wash.2d 42, 864 P.2d 1378, 1381 (1993); *In re Doe*, 855 A.2d 1100, 1106 n. 10 (D.C.App.2004). Thus, in many cases, the application of N.D.C.C. § 12.1–32–11(3) should require nothing more than an examination of whether the criminal intent behind one crime was substantially similar to the criminal intent behind the other. The majority, however, now asserts, at ¶ 10, that its bright-line test in *Ulmer* should control the definition of "criminal objective" in the statute.

[¶ 15] In this case, it is conceded by the parties that the two offenses are a part of a single course of conduct, so that is not an issue under the statute. In addition, the offenses are closely related in time and the same act—driving while intoxicated—forms the basis of both convictions. Reckless driving is defined under N.D.C.C. § 39–08–03, as follows:

> Any person is guilty of reckless driving if the person drives a vehicle:
>
> 1. Recklessly in disregard of the rights or safety of others; or
>
> 2. Without due caution and circumspection and at a speed or in a man-

---

1. The record indicates that the State initially agreed with Salveson that N.D.C.C. § 12.1–32–11(3) prevented her from being consecutively sentenced to more than one year and only came over to its current position after numerous plea agreements were rejected by the trial court.

ner so as to endanger or be likely to endanger any person or the property of another.

Except as otherwise herein provided, any person violating the provisions of this section is guilty of a class B misdemeanor. Any person who, by reason of reckless driving as herein defined, causes and inflicts injury upon the person of another, is guilty of aggravated reckless driving, and is guilty of a class A misdemeanor.

To be convicted of aggravated reckless driving, the defendant must drive a vehicle recklessly and the reckless driving must cause an injury. This was clearly proven when Salveson's guilty plea was entered. The pertinent part of the guilty plea colloquy was:

> THE COURT: Were you driving while you were intoxicated?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The Court will find that there is an adequate factual basis to accept the defendant's plea in that matter. Did you strike some pedestrians?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you cause injuries to those pedestrians?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The Court will find that there is an adequate factual basis to accept the plea to the charge of aggravated reckless driving.

In the factual basis established for Salveson's guilty plea, there simply are no facts presented establishing Salveson's act of reckless driving other than the fact she drove with a blood-alcohol concentration of .26. There are no facts in this record to indicate Salveson was weaving, speeding, inattentive, or any of the other myriad of factors that could support a finding of reckless driving had the officer observed them. I cannot comprehend how the majority can hold that Salveson had two separate and distinct criminal objectives for committing the singular act that is the indispensable element for proving both crimes.

[¶ 16] In wrestling with how to address the application of N.D.C.C. § 12.1–32–11(3) in *Ulmer*, we, correctly, resolved the case by stating:

> To drive a vehicle with a suspended or revoked license shows a criminal objective to operate a vehicle without authorized privilege to do so. To operate a vehicle while under the influence of alcoholic beverages shows a criminal intent to drive without regard to whether one is driving impaired. While both violations involve driving a vehicle, they have substantially different criminal objectives.

1999 ND 245, ¶ 7, 603 N.W.2d 865. I am of the opinion that the criminal intent to drive "without regard to whether one is driving impaired" is the same objective as driving "[r]ecklessly in disregard of the rights or safety of others" under the facts of this case. The majority does not attempt to explain to us what the criminal intent is of aggravated reckless driving. Because the only act in the record establishing reckless driving is Salveson's driving while intoxicated, I conclude her objectives for both offenses are one and the same. Had the facts shown Salveson's recklessness was based on some other act than driving while intoxicated, I would affirm.

[¶ 17] Undoubtedly, a problem applying N.D.C.C. § 12.1–32–11(3) can arise when dealing with misdemeanor traffic and other strict liability offenses because they often do not involve criminal intent as an element of the offense. In *Ulmer*, this Court held that driving a vehicle with a suspended or revoked license and driving while under the influence constituted two

crimes with substantially different criminal objectives. 1999 ND 245, ¶ 7, 603 N.W.2d 865. In doing so, we looked to the legislative history of N.D.C.C. § 12.1–32–11(3). We said:

> N.D.C.C. § 12.1–32–11(3) was adopted by the legislature in 1973 and is a near verbatim adoption of Subsection (4) of Section 3204 of the proposed Federal Criminal Code. It is appropriate, therefore, for us to look to the drafters' Comment to the proposed federal code for insight into the meaning of our statute. The Comment to Subsection (4) merely states, "when .... a defendant is convicted of unrelated class A misdemeanors he may be consecutively sentenced into the class C felony sentence range." Neither the code draft nor the commentary to Subsection (4) further explains or defines what the drafters meant by "substantially different criminal objective." However, Subsection (2) of Section 3204 of the proposed Federal Criminal Code, which limits consecutive sentences for multiple offenses, together with the Comment to Subsection (2) provide useful insight into the drafters' intended meaning of the phrase "substantially different criminal objective" under Subsection (4) of the federal draft.
>
> Subsection (2) states:
>
> (2) Multiple Sentences. A defendant may not be sentenced consecutively for more than one offense to the extent:
>
> (a) one offense is an included offense of the other;
>
> (b) one offense consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other; or
>
> (c) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.
>
> The Comment to Subsection (2) explains:
>
> > Subsection (2) prohibits consecutive sentences in three situations where the multiple crimes result from *one criminal objective*. An alternative and more general statement might be: "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was *no substantial change in the nature of the criminal objective*."
>
> Subsection (2) defines, in effect, the circumstances under which multiple offenses involve one criminal objective rather than different criminal objectives. This proposed federal language offers a bright-line definition for determining when multiple offenses involve different criminal objectives. We conclude that under N.D.C.C. § 12.1–32–11(3), multiple class A misdemeanor offenses may be deemed by the sentencing court to involve substantially different criminal objectives if they do not fall under one of the following three categories: (1) one offense is an included offense of the other; (2) one offense consists of a conspiracy, attempt, solicitation, or other form of preparation to commit, or facilitation of, the other; or (3) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

*Ulmer*, 1999 ND 245, ¶¶ 9–10, 603 N.W.2d 865 (citation omitted). I agree, as I agreed in *Ulmer*, that this test will identify many of the situations when N.D.C.C. § 12.1–32–11(3) would apply without requiring the trial court to examine the defendant's intent. However, as this case demonstrates, it cannot be an all-inclusive test.

[¶ 18] As the majority states, the crimes Salveson was convicted of do not fall into any of the three categories formulated in our bright-line test in *Ulmer*. However, because both crimes rely on the underlying fact that Salveson drove while intoxicated and the driving while intoxicated is what constituted the reckless conduct supporting her conviction for aggravated reckless driving, I believe this is the very situation for which the drafters of N.D.C.C. § 12.1–32–11(3) sought to limit consecutive sentencing. My review of the entirety of the legislative history of N.D.C.C. § 12.1–32–11(3) confirms my view. We should not, as the majority does, elevate a test we formulated by selecting only a portion of the legislative history over what that history tells us when reviewed as a whole.

[¶ 19] The bright-line test of *Ulmer*, however, is not even what the majority applies. In paragraph 7, the majority states that the application of N.D.C.C. § 12.1–32–11(3) requires us to "look to the elements of the crimes to determine whether they invoke separate criminal objectives." In doing so, the majority applies a footnote in *Ulmer*.

> Generally, the same act or transaction may constitute two distinct offenses and justify conviction on both and separate sentences to run consecutively if each offense requires the proof of some fact or element not required to establish the other. This general rule is also in harmony with our interpretation and application of N.D.C.C. § 12.1–32–11(3). Under the statute, as under the general rule of law, the trial court can impose consecutive sentences for multiple offenses when each requires proof of a different element or fact.

*Id.* at ¶ 10 n. 2 (citations omitted).

[¶ 20] By the addition of footnote 2 in *Ulmer*, this Court made the test for whether consecutive sentences exceeding one year may be imposed for class A misdemeanors under N.D.C.C. § 12.1–32–11(3) the same as the *Blockburger* test for determining whether the same act or transaction constitutes the same offense for double jeopardy purposes. *Compare Ulmer*, at ¶ 10 n. 2, *with State v. Bertram*, 2006 ND 10, ¶ 14, 708 N.W.2d 913 (citation omitted) (holding "[u]nder the 'same elements' test a court determines whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution"); *see also Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Gore v. United States*, 357 U.S. 386, 392, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).

[¶ 21] A review of the legislative history behind N.D.C.C. § 12.1–32–11(3), when not clouded by a desire to uphold *Ulmer*, reveals the test formulated in footnote 2 was precisely the narrow practice the drafters intended to prevent when drafting the provision. The drafters of the proposed Federal Criminal Code stated that, although they intended to retain the traditional authority of the court to impose concurrent or consecutive sentences at the court's discretion, additional limitations on consecutive sentencing were intended to address the problems they saw in applying only the *Blockburger* approach:

> The bracketed language of subsection (1) raises the question of whether an additional limitation is desirable and, also is intended to emphasize the need for another approach if the aggregate maximum provisions are not adopted. There are some cases where the defendant has technically committed more than one offense, but where the purpose

of providing limits for classes of offenses would be defeated if the fact that he has violated more than one statute permits pyramiding the sentences. The most obvious, perhaps, are cases involving lesser included offenses or even equal offenses where some overlap in definition is unavoidable.

II *Working Papers of the National Commission on Reform of Federal Criminal Laws* 1322 (1970). In a footnote to the above-quoted section, the drafters explain:

> The bracketed language read: "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." A new subsection (2) was inserted in its place.... Note that conviction of both an inclusive and its included offenses is prohibited by Study Draft section 703(3).

*Id.* at n. *. This bracketed language was later incorporated into Subsection (4) of Section 3204 of the proposed Federal Criminal Code, from which N.D.C.C. § 12.1–32–11(3) is derived.

[¶ 22] The drafters of the proposed Federal Criminal Code were uncomfortable with having *Blockburger* as the only bar against consecutive sentences for multiple offenses. They specifically state that the language, which our legislature adopted in enacting N.D.C.C. § 12.1–32–11(3), was intended to afford more protection than *Blockburger:*

> The question of multiple punishment is dealt with in the sentencing part of the Code. Clearly the prevention of undue accumulation of punishment lies at the very heart of the multiple crime problem as well as the more narrow problem of double jeopardy. Both this draft and section 3206 of the sentencing part take a position quite strongly op-

posed to the multiplication of punishments in common multiple offense situations.

A major source of dispute and difficulty concerning punishment for multiple offenses has been the so-called *Blockburger* or "same evidence" rule which permits consecutive or cumulative punishment for offenses arising out of a single criminal transaction so long as there is some slight variation in the elements of proof required for the two offenses. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a single sale of narcotics was penalized cumulatively as two offenses—selling drugs not in a stamped package and selling drugs not pursuant to a written order. In *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), a comparable single narcotics sale was divided into three counts with cumulative punishment. *Blockburger* states the "same evidence" test as follows:

> Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
>
> *It seems beyond argument that the appropriate sentence and the number of years for which a man shall be punished for an offense is not rationally a function of the number of statutory violations into which his conduct may be parsed by a clever pleader. The Draft, therefore, is careful not to use the Blockburger approach and to this extent changes existing Federal law.*

I *Working Papers of the National Commission on Reform of Federal Criminal Laws* 340–41 (1970) (emphasis added).

Section 3206 of the Study Draft was later renumbered to become Section 3204 later adopted by North Dakota, in part, as N.D.C.C. § 12.1–32–11(3). *See Final Report of the National Commission on the Reform of the Federal Criminal Laws* 352, Table III (1971); *see also A Hornbook to the North Dakota Criminal Code,* 50 N.D. L.Rev. 639, 659 (1974). The drafters further explain:

The multiplication of charges and punishment in a single criminal proceeding seems to be at variance with at least two related policies. One is that the legislature, by fixing a punishment for a crime, has determined the maximum level of penalty for that conduct. When the prosecutor is permitted to multiply a single act and convert it into a series of criminal acts, each carrying cumulative punishment, this legislative policy is defeated. A second basic idea is that for one man there should be one punishment; that is, that the criminal penalties are not so much directed towards retribution and the vindication of past conduct as they are aimed toward the offender as a person, his correctional needs, and the protection of society.

I *Working Papers of the National Commission on Reform of Federal Criminal Laws* 334 (1970). Although these comments deal with the multiple prosecution sections of the proposed Federal Criminal Code, the philosophy applies equally to N.D.C.C. § 12.1–32–11(3).

[¶ 23] The comments to Section 3204 of the proposed Federal Criminal Code direct us to other areas where the reasoning of the drafters is explained. *See Final Report of the National Commission on the Reform of the Federal Criminal Laws* 294 (1971). Discussing consecutive sentences again, the drafters make clear they are wrestling with two approaches to addressing the problem posed by *Blockburger* and *Gore:*

There are basically two ways to deal with a case such as *Gore.* The first is through provisions in the law defining offenses which in effect prohibit conviction of more than one offense in such a situation. Whether the robbery of two people on a single occasion or the theft of money and of jewelry during a single burglary should constitute one or two offenses is at the first instance a question of interpretation of the statute defining the offenses of robbery and of larceny. The second is through such a provision as the Model Sentencing Act or the New York proposals quoted above—a provision which, even though it is determined there can be two convictions in such an instance, prohibits the cumulation of sentences. A choice between these two methods—or perhaps the adoption of some combination of them—should be part of a new Federal Criminal Code. It is clearly indefensible to permit the fragmentation of a single offense so that a sentence in excess of the legislative maximum can be imposed.

II *Working Papers of the National Commission on Reform of Federal Criminal Laws* 1282–83 (1970). Section 3204 represents an adoption of the second approach:

No limit on multiple convictions is established. Limitations on multiple convictions could be provided; but to require the court or prosecutor to choose one of several offenses to submit to the jury or upon which to enter judgment could result in an unjustified windfall to the defendant, where the charge for the offense chosen is dismissed on appeal. Accordingly, limitations have been placed instead on sentencing (§ 3204).

*Final Report of the National Commission on the Reform of the Federal Criminal Laws* 59–60 (1971).

[¶ 24] The drafters' comments make it clear that the concern over solely using *Blockburger's* limitations on sentencing was resolved in favor of restrictions on multiple consecutive sentencing that would provide greater protection to a defendant than *Blockburger.* The majority responds to its review of history rejecting the *Blockburger* analysis by applying N.D.C.C. § 12.1–32–11(3) precisely as it would the *Blockburger* analysis. I would overrule footnote 2 of the *Ulmer* opinion to the extent that it can be read to limit the meaning of our statutory language "substantially different criminal objectives." Footnote 2 represents the very practice that the drafters of the language of N.D.C.C. § 12.1–32–11(3) intended to avoid.

[¶ 25] The majority attempts, at ¶ 8, to leave the impression that it is applying the bright-line test formulated in *Ulmer,* rather than the *Blockburger* analysis used and left unnamed in ¶ 7. However, a review of the legislative history of N.D.C.C. § 12.1–32–11(3) reveals that the drafters questioned whether a "bright-line" test could even be developed for preventing the abuse of consecutive sentencing. *See* II *Working Papers of the National Commission on Reform of Federal Criminal Laws* 1322–23 (1970). In its *Working Papers,* the commission stated the language that became N.D.C.C. § 12.1–32–11(3):

> [I]s an admittedly unsatisfactory attempt to state a principle which will preclude a consecutive sentence in some such cases. As observed in the ABA Report, no satisfactory way of stating such a limit has been developed elsewhere, primarily because so many potential variations can arise.

*Id.* at 1322. That a satisfactory bright-line test is difficult to develop has been borne out in cases both prior to and after the completion of the drafters' work. *See, e.g.,* *State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517, 524–25 (1966); *State v. Gladden,* 274 Minn. 533, 144 N.W.2d 779, 782 (1966); *State v. Reiland,* 274 Minn. 121, 142 N.W.2d 635, 637–38 (1966); *People v. Hernandez,* 242 Cal.App.2d 351, 51 Cal. Rptr. 385, 391–92 (1966); *People v. Tillery,* 141 Ill.App.3d 610, 95 Ill.Dec. 875, 490 N.E.2d 967 (1986); *State v. Smith,* 121 Idaho 20, 822 P.2d 539, 542 (1991). I do not believe that, in *Ulmer,* this Court created a perfect bright-line test, using the drafters' language, when such a test remained elusive to the drafters.

[¶ 26] To understand the principle which underlies N.D.C.C. § 12.1–32–11(3), it is important to again refer to the Comment to Subsection (2) of Section 3204 of the proposed Federal Criminal Code. The drafters stated:

> Subsection (2) prohibits consecutive sentences in three situations where the multiple crimes result from one criminal objective. An alternative and more general statement might be: "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." *In the event that subsections (3) and (4) are not adopted, some such limitation on the open-ended imposition of consecutive terms would be appropriate.*

*Final Report of the National Commission on the Reform of the Federal Criminal Laws* 293 (1971) (emphasis added). This last sentence clearly refers to the "alternate and more general statement" rather than the limited three categories of Subsection (2). The drafters, therefore, indicate that if the limitations on consecutive sentencing of felonies and misdemeanors, set forth in Subsections (3) and (4) of Section 3204, were not adopted, a "more general statement" prohibiting consecutive

sentences "would be appropriate." *See id.* Thus, the language in Subsection (4), ultimately adopted by our legislature in N.D.C.C. § 12.1–32–11(3) refers to this "more general statement." It does not refer to the limited three categories set forth in Subsection (2) of Section 3204 of the proposed Federal Criminal Code. In other words, the legislative history itself indicates that the drafters of the language of N.D.C.C. § 12.1–32–11(3) would have rejected the test we formulated in *Ulmer* as being the sole test when applying the provision.

[¶ 27] Although I believe the three Subsection (2) categories of Section 3204 will identify many of the situations when consecutive sentences for two or more class A misdemeanors may not be imposed under N.D.C.C. § 12.1–32–11(3), a trial court interpreting that provision must also keep in mind that the language of the statute, by its plain wording, requires a review of whether the crimes involved were committed as part of a different course of conduct or whether they had substantially different criminal objectives. Therefore, the three Subsection (2) categories, as this case shows, should not be viewed as being all inclusive, but rather, as merely identifying three of the categories of crimes that, as a matter of law, have substantially similar criminal objectives for purposes of N.D.C.C. § 12.1–32–11(3).

[¶ 28] Without a doubt, this is an emotionally charged case. As the majority states at ¶ 9, "Salveson's separate act of hitting two pedestrians, mutilating the leg of one of them, is more than merely reckless drunk driving." But, when the reckless driving element of the aggravated reckless driving charge is only established by the act of driving while intoxicated and the defendant has also been convicted separately for that act, the fact that an unintended consequence occurred does not

support a finding that the defendant had two substantially different criminal objectives.

[¶ 29] Dealing with similar circumstances to those presented here and applying a similar prohibition against consecutive sentencing, the Minnesota Supreme Court has held:

> [V]iolations occurring under such circumstances demonstrate a substantial relationship between the conduct constituting the violations. Stated another way, the conduct and state of mind of the defendant are indivisible even though each offense is separate in the sense of requiring proof of facts which the other does not.

*State v. Reiland,* 274 Minn. 121, 142 N.W.2d 635, 638 (1966); *see also State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517 (1966) (holding defendant's driving while under the influence of intoxicants and driving over the centerline resulted from a single criminal objective); *State v. Gladden,* 274 Minn. 533, 144 N.W.2d 779, 783 (1966) (holding, under the facts of the case, driving while under the influence of alcoholic beverages and careless driving manifested a single criminal objective).

[¶ 30] In *Ulmer,* we stated that "[t]o operate a vehicle while under the influence of alcoholic beverages shows a criminal intent to drive without regard to whether one is driving impaired." 1999 ND 245, ¶ 7, 603 N.W.2d 865. Nowhere does the majority point us to what the criminal intent of the reckless driving charge was in this case. Instead, the majority ignores that, in *Ulmer,* it equated criminal objective with intent. At paragraph 7, the majority states that criminal objective is something that can be determined by looking to the legislatively enacted elements of a crime. Then, at paragraph 9, the majority baldly claims that the fact someone was injured "evidences a new 'substantially dif-

ferent criminal objective.'" What was that objective? In what way was it not substantially similar to the objective that led to the driving while intoxicated? Does a defendant's singular intent divide into multiple objectives merely because that singular intent led to more than one result? The majority strains credulity and ignores *Ulmer* in order to affirm *Ulmer*. Under the facts, it is inescapable that the only criminal objective supporting Salevson's conviction for reckless driving was the same objective that led to the driving while intoxicated.

[¶ 31] Section 12.1–32–11(3) was adopted at a time when the rehabilitative theory of penology was at its zenith. The North Dakota Criminal Code Hornbook states: "The New Code emphasizes merger and concurrent sentences as do the Proposed Federal Code and the American Bar Association standards. The emphasis is based on the therapeutic theory of pe-

nology." 50 N.D. L.Rev. 639, 659 (1974). Since that time, society has moved towards a more retributive theory of penology. Although it may be prudent for the legislature to examine N.D.C.C. § 12.1–32–11(3) to determine if the rehabilitative philosophy that guided its adoption is still the goal of our legal system, I do not believe it is this Court's place to legislate away the intent of N.D.C.C. § 12.1–32–11(3) in favor of a retributive theory our personal predilections may favor.

[¶ 32] I would reverse and remand for resentencing.

[¶ 33] Dale V. Sandstrom, J., agrees.