Filed 1/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 15

State of North Dakota, Plaintiff and Appellee

v.

Michael David Rivera, Defendant and Appellant

Nos. 20170234 & 20170235

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Julie A. Lawyer, Assistant State’s Attorney, Bismarck, N.D., for plaintiff and appellee.

Lloyd C. Suhr, Bismarck, N.D., for defendant and appellant.

State v. Rivera

Nos. 20170234 & 20170235

Tufte, Justice.

[¶1] Michael Rivera appeals from criminal judgments entered after a jury found him guilty of two counts of creating or possessing sexually expressive images, two counts of attempting to create or possess sexually expressive images, and six counts of surreptitious intrusion.  We affirm, concluding the district court did not err by sentencing Rivera to consecutive sentences.

I

[¶2] Rivera was charged with twenty-one offenses, twenty on one criminal complaint and one additional offense on a second criminal complaint.  These two cases were joined, and all charges were tried together.  A jury found Rivera guilty of ten class A misdemeanors:  two counts of creating or possessing sexually expressive images, two counts of attempting to create or possess sexually expressive images, and six counts of surreptitious intrusion.  One felony was dismissed before trial, and the jury acquitted Rivera of ten felony charges.

[¶3] The district court sentenced Rivera to one year of imprisonment for each of the ten misdemeanor convictions.  The court imposed consecutive sentences for three of the convictions, with the rest to run concurrently with the sentences for the first three convictions.  The three consecutively-sentenced offenses, as shown on the amended judgment, included Count 2 (creating or possessing sexually expressive images on July 8, 2015), Count 3 (surreptitious intrusion on July 22, 2015), and Count 5 (attempting to create or possess sexually expressive images on August 28, 2015).

II

[¶4] Rivera argues that the district court erred by sentencing him to consecutive sentences.  He contends that N.D.C.C. § 12.1-32-11(3), does not permit consecutive sentences for these class A misdemeanor convictions.  Section 12.1-32-11(3) states:

When sentenced only for misdemeanors, a defendant may not be consecutively sentenced to more than one year, except that a defendant being sentenced for two or more class A misdemeanors may be subject to an aggregate maximum not exceeding that authorized by section 12.1-32-01 for a class C felony if each class A misdemeanor was committed as part of a different course of conduct or each involved a substantially different criminal objective.

N.D.C.C. § 12.1-32-11(3).  A class C felony has a maximum penalty of imprisonment of five years.  N.D.C.C. § 12.1-32-01(4).  Because Rivera was sentenced only for multiple class A misdemeanors, he can be consecutively sentenced only if “each class A misdemeanor was committed as part of a 
different course of conduct
 or each involved a 
substantially different criminal objective
.”  
See
 N.D.C.C. § 12.1-32-11(3) (emphasis added).  The parties disagree on the meaning and application of the two exceptions to the general rule of no consecutive sentencing.

Construction of a criminal statute is a question of law, fully reviewable by this Court.  Our primary goal in interpreting statutes is to ascertain the Legislature’s intentions.  In ascertaining legislative intent, we first look to the statutory language and give the language its plain, ordinary and commonly understood meaning.  We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage.  When a statute’s language is ambiguous because it is susceptible to differing but rational meanings, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the Legislature’s intent.  We construe ambiguous criminal statutes against the government and in favor of the defendant.  We also construe criminal statutes to avoid ludicrous and absurd results.

State v. Laib
, 2002 ND 95, ¶ 13, 644 N.W.2d 878 (citations omitted).

A

[¶5] Course of conduct is not defined under § 12.1-32-11 or within Chapter 12.1-

32, N.D.C.C.  We have not previously considered the meaning of the phrase.  Rivera argues we should interpret “course of conduct” consistent with the stalking statute’s definition emphasizing a “continuity of purpose” and consistent with our standard for joinder of offenses under N.D.R.Crim.P. 8(a), which emphasizes “a common scheme or plan.”  The State argues that the plain meaning of a different course of conduct must include three offenses committed against different victims on different days in different locations.  Because this statute may be interpreted in more than one rational way, we conclude it is ambiguous.  Section 12.1-32-11 was enacted as part of a comprehensive revision of North Dakota criminal law using the proposed Federal Criminal Code as a model.  
State v. Borner
, 2013 ND 141, ¶ 10, 836 N.W.2d 383.  We find no interpretive guidance in the official comments to the proposed Federal Criminal Code or in the relevant legislative history.

[¶6] Rivera urges this Court to rely on the definition of course of conduct provided under N.D.C.C. § 12.1-17-07.1(1)(a).  That statute provides, “As used in this section . . . ‘Course of conduct’ means a pattern of conduct consisting of two or more acts evidencing a continuity of purpose.”  N.D.C.C. § 12.1-17-07.1(1)(a).  The State argues this definition should not be imported into Chapter 12.1-32, because it states “[a]s used in this section,” which limits its application to N.D.C.C. § 12.1-17-07.1 (the “stalking statute”).  Further, the State argues that in the context of stalking under § 12.1-17-07.1(1)(c)(1), multiple acts will be directed at the same person, which does not apply in this case where each offense had a separate victim.  We agree with the State that the different contexts of consecutive sentencing and stalking strongly suggest the phrase carries different meaning in these two sections.  When “course of conduct” is used in the stalking statute, it refers to multiple acts being committed against one person or that person’s family member, comprising one offense.  In the context of stalking, it is the aggregation of discrete acts into a course of conduct that constitutes the singular offense.  The term “course of conduct” is used in the stalking statute to tie together acts “directed at a specific person” that may occur at different times and locations.  In contrast, § 12.1-32-11(3) uses the term “course of conduct” to determine whether offenses are sufficiently distinct to support consecutive sentences.  As applied to consecutive sentences in general and as argued here, a course of conduct may or may not include multiple separate victims.  The stalking statute provides little help in resolving the issue presented here.

[¶7] The Supreme Court of Minnesota used the following test to determine whether a defendant’s two offenses occurred as part of a single course of conduct and thus should have received a single punishment:  “Offenses are part of a single course of conduct if the offenses occurred at substantially the same time and place and were motivated by a single criminal objective.”  
State v. Jones
, 848 N.W.2d 528, 533 (Minn. 2014); 
see also Deshazier v. State
, 877 N.E.2d 200, 211-13 (Ind. Ct. App. 2007) (concluding possession of a handgun and marijuana was not connected with resisting arrest in same “episode of criminal conduct” because they were not “closely related in time, place, and circumstance”).

[¶8] Although we have not defined course of conduct, we have acknowledged that a defendant’s crimes were a part of the same course of conduct.  In 
State v. Salveson
, we concluded that the defendant’s crimes of driving under the influence and aggravated reckless driving were a part of the same course of conduct.  2006 ND 169, ¶ 5, 719 N.W.2d 747 (affirming consecutive sentences because offenses had substantially different criminal objectives).  Salveson’s two charges arose from a single act of driving in which he was driving under the influence and recklessly hit two pedestrian children.  
Id.
 at ¶ 2.  Thus, as in 
Jones
 and 
Deshazier
, whether offenses are part of the same course of conduct turns in significant part on whether they occur at the same time and place.

[¶9] Here, the three consecutively-sentenced offenses involved different crimes committed against different victims on different dates.  Thus, the case is distinguishable from 
Salveson
 and would not meet the test under 
Jones
.  Rivera argues that because his purpose was to collect sexual images of multiple victims and he did so in a similar manner in similar retail locations continuously over a span of weeks, the offenses were all part of a single course of conduct.  
Jones 
expressly rejected this argument to connect separate crimes, stating “[b]road statements of criminal purpose do not unify separate acts into a single course of conduct.”  
Jones
, 848 N.W.2d at 533 (citing cases rejecting claims that sharing drugs, making money, and general hatred of women were sufficient to connect separate offenses for sentencing).  We also reject the argument that the similarity of method and motive between Rivera’s offenses are sufficient to make them one course of conduct.

[¶10] Rivera also argues that because the State joined his two cases, the offenses must have been a part of the same course of conduct.  Joinder is proper if the offenses “are of the same or similar character . . . or are connected with or constitute parts of a common scheme or plan.”  N.D.R.Crim.P. 8(a); 
see also 
N.D.R.Crim.P. 13 (allowing separate cases to be “tried together as though brought in a single indictment, information or complaint if all offenses and all defendants could have been joined in a single indictment, information, or complaint”).  The second case had only one charge, and it was not one of the consecutively-sentenced offenses.  Thus, it is not the State’s motion and argument to join the cases that is relevant but the State’s decision to file counts 2, 3, and 5 on the same criminal complaint, asserting that they are sufficiently similar to satisfy Rule 8.  Although the course of conduct exception and joinder use similar language, the policy concerns underlying each are different.  Joinder promotes judicial convenience and economy, avoiding a multiplicity of trials where no substantial prejudice to the defendant’s right to a fair trial is incurred.
  State v. Freed
, 1999 ND 185, ¶ 11, 599 N.W.2d 858.  Section 12.1-

32-11(3) looks to avoid over-sentencing a defendant for the same conduct.  
See Salveson
, 2006 ND 169, ¶ 22, 719 N.W.2d 747 (Maring, J., dissenting) (quoting I 
Working Papers of the National Commission on Reform of Federal Criminal Laws
 334 (1970)) (stating, “[T]he legislature, by fixing a punishment for a crime, has determined the maximum level of penalty for that conduct.  When the prosecutor is permitted to multiply a single act and convert it into a series of criminal acts, each carrying cumulative punishment, this legislative policy is defeated.”).  The course of conduct exception limits the general rule barring consecutive sentencing for misdemeanors, but because it contemplates different conduct on the part of the defendant, the policy concerns of § 12.1-32-11(3) remain intact.  Because the course of conduct exception and joinder promote different policies, any similarity in their language is irrelevant in this context.

[¶11] We conclude each of Rivera’s consecutively-sentenced offenses was committed as part of a different course of conduct and consequently the judgment does not run afoul of § 12.1-32-11(3).

B

[¶12] Rivera argues that the offenses did not involve a substantially different criminal objective.  Because we conclude that the three convictions sentenced consecutively were part of a different course of conduct, we do not reach the question of whether they may be made consecutive because they involve a substantially different criminal objective.

III

[¶13] We conclude that the consecutively-sentenced misdemeanors were committed as part of a different course of conduct.  We affirm the criminal judgments.

[¶14] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Jon J. Jensen

Gerald W. VandeWalle, C.J.